Argued and submitted December 10, 1984, reversed and remanded February 6, 1985

## STATE OF OREGON,
*Respondent,*

*v.*

## BRETT WILLIAM WISE,
*Appellant.*

(83-0301; CA A32417)

695 P2d 68

Stephen A. Houze, Portland, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals his convictions for manufacture and possession of a controlled substance, ORS 475.992, on the ground that the trial court should have suppressed evidence seized during a search, pursuant to a warrant, of property he had occupied. He asserts that some of the information in the affidavit supporting the warrant application was the product of an illegal detention and that, without the illegally obtained information, the affidavit does not show probable cause for the issuance of the warrant. We agree and therefore reverse and remand for a new trial.

Two informants independently called Detective Sandercock of the Yamhill County Sheriff's Department and told him that, about a week before the calls, some hunters had stumbled onto several marijuana patches on land in a rural part of the county.[1] One informant also told Sandercock that the previous day five or six teenagers had gone onto the property to look for the patches and were met by a man who threatened them with a rifle and told them to get off. Sandercock took one of the informants to the property so that the informant could positively identify it. Sandercock believed that he knew where the property was from the informant's description. It contained 40 acres, surrounded by a fence with a closed gate. From the gate Sandercock could see a new, green metal building some distance down the lane. He then took the informant home and returned to the property, parked his car outside the fence, went through the gate and walked up the lane toward the building.

Near the building Sandercock met defendant. In response to Sandercock's questions, defendant said that he was up from California on a hunting trip. Defendant did not have a rifle with him at the time and was unable to produce a hunting license. Gary Pfeffer then came out of the woods near the building. He told Sandercock that he was cutting firewood to sell. Pfeffer carried a chainsaw; Sandercock had previously heard someone chopping wood. Pfeffer stated that the owner of the land was a Chuck Johnson and that he had given the two permission to use it. Before going to the area, Sandercock

---

[1] The record does not show who these informants were, except that the name of one was mentioned at the hearing on the motion to suppress.

had learned that the property was listed in the tax assessor's records as owned by a Charles Johnson. Pfeffer admitted asking some people to leave the land the day before and that he had had a rifle with him at the time, but he denied making any threats.

Sandercock told defendant and Pfeffer that he was investigating reports of marijuana growing on the property and asked them for permission to search for it. They refused, stating that Johnson had told them to do so. Sandercock then told them to come with him to his patrol car. When there, he called for other officers to "secure the property" and, after they arrived, returned to McMinnville to get a search warrant. However, the district attorney told him that he needed more information before applying for a warrant. Sandercock then called his first informant and learned that the hunter who had seen the marijuana was Jim Broxterman. He called Broxterman, who said that he had seen some marijuana, but not very much, and that it was not worth Sandercock's time to investigate it. Sandercock then called a third informant, one suggested by the first. This informant told Sandercock that he had seen Broxterman and Broxterman's two sons taking "high grade" marijuana from the property.

It was now after 5 p.m., and the district attorney told Sandercock to stop trying for a warrant that evening. He then radioed the officers to release the property and its occupants. They had been held for over two hours. During the detention, defendant, accompanied by a state police officer, went to the building for cigarettes. After getting them he took some keys from his pocket, threw them into the building and locked the door with a padlock. Defendant also told the officer that the officer might as well arrest them then, because he was going to do so when Sandercock got back with the warrant. The officer told Sandercock of these occurrences the next day. Sandercock then applied for and received a warrant, resulting in the challenged search.

Sandercock's affidavit[2] related the tips from the unnamed informants, his encounter with defendant and

---

[2] The sequence of events in Sandercock's affidavit is not always the same as that in his report or his testimony on the motion to suppress. The variations are not significant in our analysis.

Pfeffer, their refusal of consent to search, defendant's actions and statements while the officers were "securing" the property, Broxterman's statement and the third informant's statement that Broxterman and his sons had taken marijuana from the land. Broxterman is the only informant named in the affidavit. Except for his admission that he had seen a small amount of marijuana on the property, there is no confirmation of any of the unnamed informants' hearsay statements. There are no facts in the affidavit showing that the unnamed informants are reliable, as ORS 133.545(3) requires.

The use of hearsay statements of unnamed informants in search warrant affidavits requires special care. *See State v. Villagran,* 294 Or 404, 657 P2d 1223 (1983); *State v. Montigue,* 288 Or 359, 605 P2d 656, *cert den* 449 US 846 (1980). The United States Supreme Court for a number of years required that such statements satisfy a "two-pronged" test of their reliability in order for them to meet the requirements of the Fourth Amendment. *See Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969); *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964). More recently, it has adopted a "totality of the circumstances" test. *See Illinois v. Gates,* 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983). We need not decide in this case what the proper test of unnamed informant reliability is under the Oregon Constitution. This affidavit is so lacking in indicia of reliability for so much of the informants' information that that information, considered by itself, is insufficient to establish probable cause. Broxterman is a named informant, but his statement downplays the amount of marijuana on the land. It does not add enough to the other statements to justify the broad scope of the search permitted under this warrant.[3]

To sustain this warrant we would at the very least have to add defendant's actions while he, Pfeffer and the premises were "secured" to the other information in the affidavit. As the Supreme Court has pointed out, "securing the premises" has no legal meaning. Rather, we must determine exactly what the officers did and then decide whether it was permissible under powers that police have, independently of

---

[3] Sandercock's encounter with defendant and Pfeffer before he "secured the property" adds nothing to the other information. A refusal to consent to a search cannot aid in showing probable cause for a search.

any power to "secure the premises." *See State v. Hansen,* 295 Or 78, 664 P2d 1095 (1983); *State v. Matsen/Wilson,* 287 Or 581, 601 P2d 784 (1979).

The state, apparently relying on ORS 131.615, argues that the two-hour detention was for a reasonable time and "in the course of a reasonable and continuing inquiry into suspected criminal activity." We do not decide whether a detention of this length can *ever* be reasonable, for this one was not. Aside from some limited inquiry into possible game violations, there was no criminal investigation at the property during the detention. Defendant, Pfeffer and the officers simply waited for further orders. Sandercock, in McMinnville, was not running warrant checks or making other inquiries about defendant and Pfeffer to determine whether he could continue to hold them. He was trying to develop independent evidence that would justify a warrant to search the property. It was neither reasonable nor necessary to that inquiry to detain defendant and Pfeffer for so long a time, and the detention was thus illegal under ORS 131.615 and Article I, section 9, of the Oregon Constitution.[4]

Because the detention was an illegal seizure of defendant's person, defendant's acts and statements made during it were the fruit of the illegality. They therefore were not available for the state to use in showing probable cause for a search. The remaining, legally obtained information in Sandercock's affidavit does not show probable cause for the warrant that the court issued. The warrant was therefore void, and the court should have suppressed the evidence seized pursuant to it.

Reversed and remanded for a new trial.

---

[4] Because Sandercock did not have probable cause before detaining defendant and Pfeffer, the detention could not have been a valid arrest. The state does not claim otherwise.