Argued and submitted December 9, 1994, reversed and remanded September 6, petition for review denied November 21, 1995 (322 Or 360)

# STATE OF OREGON,
*Appellant,*

*v.*

# DAVID N. GILMOUR,
*Respondent.*

(TM93-1515; CA A83354)

901 P2d 894

Stephanie S. Andrus, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Chris W. Dunfield argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge,* and De Muniz and Leeson, Judges.

RIGGS, P. J.

Leeson, J., dissenting.

---

* Riggs, P. J., *vice* Rossman, P. J., retired.

## RIGGS, P. J.

The state appeals from a pretrial order granting defendant's motion to suppress the results of a breath test. The issue is whether the arresting officer had probable cause to arrest defendant for driving under the influence of intoxicants (DUII), ORS 813.010. We hold that he did, and reverse.

Shortly before 2:00 a.m. on October 17, 1993, officer Bressler was stopped at the intersection of Park and 3rd Street[1] in Corvallis, with his right turn signal activated. He watched defendant's vehicle, which was beginning to leave the parking lot of a tavern, approach the point at which the lot enters 3rd Street. The vehicle paused for approximately 45 seconds, turned left onto 3rd Street, crossed the two southbound lanes and crossed the center turn lane, all without using turn signals.[2] Bressler drove up behind defendant's car and activated his overhead lights. Defendant turned into a convenience store parking lot and stopped.

When Bressler approached defendant's vehicle, the driver's window was rolled down about four inches. A passenger sat in the passenger seat. Bressler asked defendant, who was driving, to roll down his window further. Defendant refused. Bressler smelled an odor of alcohol coming from inside the car. He asked defendant how much he had had to drink and defendant replied that he had not been drinking. Bressler then asked defendant to produce his driver's license, which defendant did without difficulty. When defendant showed his license, Bressler observed that defendant's eyes were bloodshot and watery. He asked defendant to get out of the car and defendant refused. Bressler advised defendant of his *Miranda* rights and the consequences of refusing to perform field sobriety tests. He then repeated his request for defendant to get out of the car. Defendant responded, "I'd

---

[1] Third Street is a north-south four-lane highway with a center turn lane.

[2] Bressler testified that, although defendant's left turn signal was on for most of the 45 second wait, defendant turned his signal off before entering 3rd Street. Although under other circumstances that fact could cause one to suspect that defendant's mental functioning was impaired, here it is a neutral fact. At defendant's license suspension hearing, Bressler testified that he "assumed" that defendant's vehicle waited so long before turning *because defendant was waiting for the officer to complete the right turn that the patrol car was signaling*. Given the relative positions of defendant's and Bressler's cars, the rules of the road required that defendant give way to Bressler.

rather not," and told Bressler that he would not get out of the car unless he was under arrest. Bressler arrested defendant.

Bressler took defendant to jail, where he administered an Intoxilizer breath test. The test revealed a blood alcohol content of .09 percent. Defendant was then released from custody. He called a taxi and went to a hospital, where he independently obtained a blood test. The test revealed a .06 percent blood alcohol content. Approximately 74 minutes had elapsed since he had taken the Intoxilizer test.

In a pretrial motion to suppress the breath test results, defendant contested the validity of the stop and the arrest and also contended that he had been denied an opportunity to have an independent blood test performed within a reasonable time. The trial court held that the stop was valid, because of the traffic infractions that defendant had committed,[3] and that defendant had been given a reasonable opportunity to obtain an independent blood test. However, the court concluded that Bressler lacked an objective basis for believing that defendant was under the influence of intoxicants when he arrested him. Accordingly, the court suppressed the evidence of the Intoxilizer test.

On appeal, the state argues that Bressler did have probable cause to arrest defendant for DUII, based on his observations that defendant:

"(1) left the parking lot of a tavern in the early morning hours[;] (2) remained stopped at the exit to the parking lot for approximately 45 seconds before exiting onto the street; (3) made an unlawfully wide turn from the parking lot to 3rd Street; (4) had watery and bloodshot eyes; (5) was driving a vehicle emanating the odor of alcohol; (6) refused to lower his window more than four inches or so during the stop; (7) told Deputy Bressler he had had nothing to drink; and (8) declined to submit to field sobriety tests, even after he was warned of the consequences of refusal."

According to the state, "the most important factor [supporting probable cause] in this case was defendant's refusal to submit to field sobriety tests."

---

[3] His failure to signal the turn and lane changes was a violation of ORS 811.400(1).

Defendant argues that the administration of field sobriety tests is a search and that there must be probable cause to arrest for DUII *before* field sobriety tests can be required of a suspect. He contends that the state's reliance on his refusal to submit to field sobriety tests is misplaced in the light of *State v. Nagel*, 320 Or 24, 880 P2d 451 (1994).

In *Nagel*, the Supreme Court held that the administration of field sobriety tests is a search within the meaning of Article I, section 9, of the Oregon Constitution.[4] *Id.* at 31. In order for a search to be constitutionally permissible, the police must have a warrant unless the search falls within one of the recognized exceptions to the warrant requirement. *Id.* One of those exceptions is "a search conducted with probable cause and under exigent circumstances." *Id.* at 31-32. Under Article I, section 9, probable cause has both a subjective and an objective component. An officer must subjectively believe that a crime has been committed and therefore a thing is subject to seizure, and that belief must be objectively reasonable in the circumstances. *Id.* at 32.

Here, the trial court's probable cause analysis concluded only that Bressler lacked an objective basis for believing that defendant was driving under the influence of intoxicants. The state argues, and defendant does not seriously contest, that we may infer, from the record before us, that Bressler possessed the requisite subjective belief. We agree that that was a tacit finding of the trial court.

As support for its position that Bressler's belief was also *objectively* reasonable, the state relies primarily on defendant's refusal to submit to the field sobriety tests. That reliance is misplaced, in the light of *Nagel*.[5] As noted above, *Nagel* held that field sobriety tests are a "search," within the meaning of the Oregon Constitution, and therefore cannot be

---

[4] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[5] The state submitted its appellate brief in this case a few weeks before the Supreme Court's decision in *Nagel*. The state did not submit a memorandum of additional authorities explaining the impact of that decision on this case. ORAP 5.85.

conducted unless the officer has a warrant or has probable cause and there are exigent circumstances. If refusing to take field sobriety tests was itself a fact that could be used to establish probable cause to administer those tests, citizens' ability to exercise their constitutional right to be free from unreasonable governmental searches would be profoundly impaired, because if both consent *and* refusal to consent provided bases for officers to conduct searches, there would be no circumstances under which officers could *not* search. That result is clearly not allowed by our constitution. Just as the fruits of a search cannot be used, after the fact, to justify a search that has been conducted, a citizen's refusal to consent to a search, before it takes place, cannot be used to establish the requisite probable cause to conduct the search.

■■    The state contends that, because an individual can consent to a governmental search, and because drivers have impliedly consented to such searches under ORS 813.135, a driver's refusal to take field sobriety tests is a fact that can give rise to probable cause to arrest that driver for DUII. That approach would allow officers to, in effect, use as "evidence" of guilt a defendant's "choice" to take or refuse certain field sobriety tests. The Supreme Court has recently held that the government's use of such a choice as evidence in a DUII prosecution requires a defendant to incriminate himself or herself, in violation of the Oregon Constitution. *State v. Fish*, 321 Or 48, 893 P2d 1023 (1995).[6] Furthermore, it is well established that the act of refusing an officer's request to search *cannot* be used to support probable cause. *State v. Lavender*, 93 Or App 361, 364, 762 P2d 1027 (1988); *State v. Wise*, 72 Or App 58, 62 n 3, 695 P2d 68 (1985). Accordingly, refusal to consent to field sobriety tests cannot be used to establish probable cause to believe that a defendant is intoxicated.

■    The only question to be resolved, then, is whether the *remaining* facts in this case were sufficient to establish probable cause. Several of the facts are neutral, in that they neither

---

[6] We recognize that the rule announced in *Fish* applies to refusal evidence that is offered in a DUII proceeding, whereas here, the refusal is being used to establish probable cause. The common denominator, however, is that in both settings a driver's refusal is incriminating, because it is being used to infer guilt, and that inference is likely to have deleterious consequences for the driver, *i.e.*, arrest or conviction.

validated nor refuted Bressler's belief that defendant was intoxicated: Defendant waited for 45 seconds before entering 3rd Street, *see* note 2, above, declined to roll down his window further than four inches, denied that he had anything to drink and refused to step out of his vehicle when requested. Two of the facts are exculpatory, in that they tended to disprove the existence of intoxication: Defendant's speech was not slurred and he had no difficulty producing his driver's license.

Nevertheless, several facts tended to establish defendant's intoxication: While leaving a tavern parking lot at 2:00 a.m., defendant committed a traffic infraction and, during the stop that followed, the officer observed defendant's bloodshot, watery eyes and smelled a strong odor of alcohol emanating from the vehicle.[7] We hold that those facts, in combination, were sufficient to establish probable cause that defendant was intoxicated. Accordingly, the trial court erred in granting defendant's motion to suppress.

Reversed and remanded.

**LEESON, J.,** dissenting.

I would affirm the trial court. The state argued that "the most important factor" supporting probable cause to arrest in this case was defendant's refusal to submit to field sobriety tests. As the majority correctly observes, that reliance is misplaced in the light of *State v. Nagel*, 320 Or 24, 880 P2d 451 (1994). The remaining question is whether the other facts found by the trial court are sufficient to constitute probable cause for arresting defendant for DUII. 136 Or App at 299. I believe those facts rise only to the level of a reasonable suspicion that defendant was driving under the influence. That is not enough. An arrest requires probable cause.

---

[7] Defendant highlights the fact that, because the odor of alcohol was emanating from a vehicle that had two occupants, the officer could not tell if the odor was coming from defendant, his passenger, or both, and, therefore, the odor could not be used to establish probable cause to arrest him for DUII. That argument misses the point. The officer was not required to explore and eliminate all possible alternative explanations for the smell of alcohol in defendant's vehicle in order for that odor, *in combination with the other relevant facts*, to give rise to probable cause. *Cf. State v. Villagran*, 294 Or 404, 413, 657 P2d 1223 (1983) (discussing "most promising place" rule).

In my opinion, there are only two inculpatory factors in this case — defendant's bloodshot eyes and an odor of alcohol emanating from the car. There are also two exculpatory factors — defendant had no difficulty retrieving his driver's license and his speech was not slurred. In order to conclude that Bressler had probable cause to arrest, the majority either has concluded as a matter of law that the two inculpatory factors alone are sufficient, or it has concluded that there is legal significance to the other factors. Taxi drivers are among those who will be interested to learn that, if they are called to pick up an intoxicated passenger at a tavern in the early hours of the morning and, upon leaving the parking lot, commit the common traffic infractions of driving out of a parking lot without signaling and failing to signal a lane change, they are at risk for being arrested for DUII.

Significantly, in all of the cases cited by the state to support its argument that Bressler had probable cause to arrest defendant, both we and the Supreme Court required more evidence of intoxication than was present here. *E.g., Nagel*, 320 Or at 24 (bloodshot and glassy eyes; difficulty retrieving license; odor of alcohol from defendant); *State v. Moylett*, 313 Or 540, 836 P2d 1329 (1992) (ran into stopped truck; odor of alcohol from defendant; bloodshot and watery eyes; slow and slurred speech; admitted having three alcoholic drinks); *Arndt v. Motor Vehicles Div.*, 80 Or App 389, 722 P2d 45 (1986) (speeding; crossed fog line; odor of alcohol from defendant; slurred speech; bloodshot eyes); *State v. Reddish*, 78 Or App 219, 715 P2d 495 (1986) (rear ended car stopped at intersection, killing one and seriously injuring another; odor of alcohol from defendant); *State v. Niles*, 74 Or App 383, 703 P2d 1030 (1985) (slow to respond to officer requests; bloodshot and watery eyes; swayed as he walked; slurred speech; odor of alcohol from defendant); *Howder v. Motor Vehicles Div.*, 21 Or App 564, 535 P2d 552 (1975) (weaving in traffic; odor of alcohol from defendant; slurred speech). Those cases are still good law and I do not understand why the majority has departed from them in this case.

I dissent.