Argued and submitted February 28, reversed and remanded for new trial
September 6, 1995

# STATE OF OREGON,
*Respondent,*

*v.*

# DARRYL ANTHONY STOWERS,
*Appellant.*

## (9302-31323; CA A80649)

902 P2d 117

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Janie M. Burcart, Assistant Attorney General, argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and R. Victoria Roe, Assistant Attorney General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals from a conviction for possession of a controlled substance. ORS 475.992. He assigns error to the trial court's denial of his motion to suppress evidence obtained in the course of his arrest for driving under the influence of intoxicants. We reverse and remand.

We take the facts from the trial court's findings. Officer Durbin stopped defendant for a traffic infraction; there is no dispute as to the validity of the stop. Durbin noticed that defendant's hands were shaky, that his eyes were open wide and bloodshot and that he was continually licking his lips. Based on his experience and training, Durbin suspected that defendant might be under the influence of drugs.

Durbin asked defendant to get out of the car, and defendant did as he was asked. Durbin conducted a "rebound dilation" test, by observing the extent to which defendant's pupils contracted and expanded in response to Durbin's flashlight. Durbin concluded from the test that defendant's eyes were unusually dilated. Durbin also reached over and placed his fingers on defendant's neck, to take defendant's carotid pulse. Defendant's pulse was 150 beats per minute, which, in Durbin's experience, suggested drug use. Durbin noticed that defendant continued to lick his lips and that he was looking around "like a caged cat." Durbin asked defendant if he had taken drugs lately, and defendant replied that he had taken cocaine two weeks earlier. In Durbin's experience, the use of cocaine two weeks earlier made it more likely than not that defendant still was using cocaine, "because cocaine users tend to become addicted and to require daily use."

At that point, Durbin placed defendant under arrest. He handcuffed defendant and transported him to the police station. When defendant got out of the police car, he dropped a bindle of cocaine from his hand. Defendant was then charged with possession of a controlled substance.

Defendant moved to suppress the evidence of the cocaine on the ground that the officer lacked probable cause to arrest him for driving under the influence. At the suppression hearing, Durbin testified at length concerning his training and experience in identifying persons under the influence of drugs in general and about his evaluation of defendant's

condition in particular. When questioned about the point at which he formed a subjective belief that defendant was, in fact, under the influence, he testified:

"Q.   Officer, when — is it fair to say that when you first observed [defendant] as he was going for his license during that one minute he's in the car, you determined at that point — at the end of that one minute observation — that you were going to have him step out of the car and evaluate the situation further?

"A.   Yes.

"Q.   Okay. [A]nd is it fair to say that after your evaluation that you've described, behind the car, that you made the decision to arrest [defendant]?

"A.   Yes.

"* * * * *

"Q.   Prior to communicating the fact that he was under arrest, * * * you made up your own mind, at some point, that he was going to be arrested, correct?

"A.   Well, I'd have to answer in this way. That each one of these observations and the conversation are the building block[s]. And when I got to the point where I believed I had probable cause to make the arrest, that is where I initiated the arrest, and that's where [defendant] was handcuffed and told he was under arrest.

"Q.   Okay. In your mind, was the building block — or the final block in your mind to — to give you what you believed to be probable cause to arrest him, was that when you had him step from the car?

"A.   No.

"Q.   Okay. Was it when you had him go back to the rear of the car?

"A.   No.

"Q.   Was it when you tested his — his eyes with the flashlight?

"A.   No.

"Q.   And when you checked his pulse?

"A.   No.

"Q.   Okay. At what point, then, did you — was it just instantaneous, you formed — you formed the conclusion and then communicated to [defendant]?

"A. Well, again, I — I'll answer it in this fashion. That the conversation and evaluation took me to a place where I felt that probable cause existed for the arrest, in my opinion.

"Q. Okay.

"A. And that's where I arrested him."

The trial court denied defendant's motion, finding that Durbin was an expert at detecting whether people are under the influence of drugs, that Durbin had a subjective belief that probable cause existed to arrest, and that Durbin's subjective belief was objectively reasonable. Defendant then was found guilty of possession of a controlled substance.

On appeal, defendant challenges the finding of probable cause and the trial court's conclusion that Durbin qualified as an expert. He also argues that Durbin's "rebound dilation" test and his examination of defendant's carotid pulse constituted searches that were conducted without probable cause. Finally, he argues that the trial court erred in accepting Durbin's testimony that, once a person uses cocaine, it is likely that they will become addicted and continue to use cocaine. We address only defendant's argument that Durbin's examination of defendant's pulse constituted an illegal search, because we find that issue dispositive.

Defendant argues that, when Durbin reached over and placed his hand on defendant's neck to take his pulse, Durbin conducted a search of his person without probable cause, in violation of the state and federal constitutions. The state does not address defendant's contention that taking his pulse constituted a search. It argues, however, that, if taking his pulse did constitute a search, the search was reasonable, because it was based on probable cause and exigent circumstances.

■ We begin with the argument that Durbin's examination of defendant's pulse violated defendant's state constitutional rights. *See State v. Rodriguez*, 317 Or 27, 32, 854 P2d 399 (1993). Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers and effects, against unreasonable search, or seizure * * *."

Whether particular police conduct constitutes a "search" within the meaning of Article I, section 9, is determined by examining

"whether the government's conduct 'would significantly impair an individual's interest in freedom from scrutiny, *i.e.,* his privacy.' "

*State v. Wacker*, 317 Or 419, 425-26, 856 P2d 1029 (1993) (quoting *State v. Dixon/Digby*, 307 Or 195, 211, 766 P2d 1015 (1988)). The Supreme Court's decision in *State v. Nagel*, 320 Or 24, 880 P2d 451 (1994), is instructive in that regard. In that case, the court held that an officer's administration of certain field sobriety tests constituted an Article I, section 9, search.[1] The court noted that, by conducting the tests, the officer could

"observe certain aspects of the defendant's physical and psychological condition that he was otherwise unable to observe. * * *

"The officer created a situation that exposed information about defendant that was otherwise not observable by either the officer or by members of the general public and was, thus, private."

*Id.* at 31.

■    By placing his hand on defendant's neck to take a pulse, Durbin could examine aspects of defendant's physical and psychological condition that were not otherwise observable either to Durbin or to the public. In short, a person's pulse is private, and it is not subject to examination absent a warrant or a constitutionally recognized exception to the warrant requirement. The state argues that, in this case, Durbin's warrantless examination of defendant's pulse was justified by probable cause and exigent circumstances.

■    There are two components to the probable cause portion of the exception:

"An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to

---

[1] The court did not explain whether all five of the tests — reciting the alphabet, counting backwards, standing on one leg, counting from 1000, walking heel to toe in a straight line and the "Horizontal Gaze Nystagmus" test — constituted searches within the meaning of Article I, section 9, or if only some of them do. For our purposes, however, that does not matter.

seizure [or search], and this belief must be objectively reasonable in the circumstances."

*State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986); *see also Nagel*, 320 Or at 32. Moreover, the officer must formulate that belief "at the time he acts." *Owens*, 302 Or at 204.

The trial court found that Durbin subjectively believed that he had probable cause to arrest defendant, but it did not say when Durbin formed that belief, that is, whether Durbin formed it *before* he searched defendant. Even assuming that the trial court had found that Durbin subjectively believed he had probable cause before taking defendant's pulse, there is no evidence to support such a finding. *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621 (1968). Durbin testified unequivocally that, at the time he examined defendant's pulse, he did not believe that it was more probable than not that defendant was driving while intoxicated:

"Q. Okay. In your mind, was the building block — or the final block in your mind to — to give you what you believed to be probable cause to arrest him, was that when you had him step from the car?

"A. No.

"* * * * *

"Q. And when you checked his pulse?

"A. No."

He testified that it was not until *after* taking defendant's pulse, immediately before defendant's arrest, that he formed the belief that defendant was intoxicated:

"Q. Okay. At what point, then, did you — was it just instantaneous, you formed — you formed the conclusion and then communicated to [defendant]?

"A. Well, again, I — I'll answer it in this fashion. That the conversation and evaluation took me to a place where I felt that probable cause existed for the arrest, in my opinion.

"Q. Okay.

"A. And that's where I arrested him."

The state cannot satisfy the first component of the test for probable cause, because Durbin did not form a subjective belief as to probable cause until after he had conducted his search. Taking defendant's pulse, in other words,

amounted in an unconstitutional search. As a result, the information garnered from that search should not have been used to provide probable cause to arrest defendant. Durbin, however, testified that that information was one of the indispensable "building blocks" to the formation of his belief that defendant was driving while intoxicated. At the time of the arrest, therefore, he did not have probable cause to believe that defendant was driving while intoxicated. The trial court erred in reaching the contrary conclusion and in denying defendant's motion to suppress.

Reversed and remanded for new trial.