Argued and submitted September 22, affirmed December 27, 2000

In the Matter of the Suspension of
the Driving Privileges of
DUANE LEE EZZELL,
*Respondent,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES BRANCH (DMV),
*Appellant.*

(992263; CA A108381)

17 P3d 516

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

William O. Bassett filed the brief for respondent.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

The Oregon Driver and Motor Vehicle Services Branch (DMV) appeals from the circuit court's reversal of a DMV order that suspended petitioner's driver's license under ORS 813.410 for failure of an alcohol breath test in violation of ORS 813.100(1).[1] DMV assigns error to the circuit court's determination that the investigating officer "did not have probable cause to arrest petitioner prior to requesting him to perform a breath test." Although our disposition is phrased with respect to the circuit court's judgment, our substantive review is of DMV's underlying order. *See Shakerin v. MVD*, 101 Or App 357, 360, 790 P2d 1180 (1990). That is, we, like the circuit court, review DMV's order for substantial evidence and errors of law. *Winroth v. DMV*, 140 Or App 622, 624, 915 P2d 991 (1996). We affirm.

The material facts are undisputed. At 2:17 on the morning of April 10, 1999, St. Helens Police Officer Moss saw petitioner's car pull out of the parking lot of a restaurant/lounge and turn southbound onto Highway 30. Moss observed petitioner's car commit several traffic infractions in a very short time and, ultimately, make an unsignaled right turn onto a side road.

Moss stopped the car and, when he approached the car, detected a slight odor of alcohol coming from petitioner. He also noticed that petitioner had watery eyes. Moss then administered a Horizontal Gaze Nystagmus (HGN) test and several field sobriety tests (FSTs). After considering the results of those tests, Moss arrested petitioner for driving under the influence of intoxicants (DUII). ORS 813.010. Moss did not develop subjective probable cause that petitioner was driving under the influence of intoxicants until after he had completed administering the HGN test and the FSTs.[2]

---

[1] DMV initially appealed from an *order* of the circuit court reversing DMV's order. However, ORS 813.450(3) specifies that "[a]ny party to the proceedings before the circuit court may appeal from the *judgment* of the court to the Court of Appeals." (Emphasis added.) Accordingly, after oral argument we granted the trial court leave pursuant to ORS 19.270(4) to enter the requisite judgment, and the court did so.

[2] In the DMV administrative hearing on the proposed suspension of petitioner's driver's license, Moss testified as follows:

After taking petitioner to the Columbia County Jail and advising him of his statutory rights and consequences, ORS 813.130, Moss asked petitioner to take a breath test, and petitioner ultimately agreed. The test registered petitioner's blood-alcohol level as 0.09, in excess of the 0.08 standard imposed by ORS 813.300.

DMV subsequently gave petitioner written notice of intent to suspend his driver's license. ORS 813.100(3)(b). Petitioner challenged the proposed suspension administratively, requesting a hearing pursuant to ORS 813.410.

At the administrative hearing, petitioner argued, particularly, that, at the time of the arrest, Moss did not have "reasonable grounds to believe" that petitioner had been driving under the influence of intoxicants. ORS 813.100(1).[3] The hearing officer made two determinations pertinent to this appeal. First, the hearing officer concluded that the results of the HGN test could not be considered against petitioner, because Moss had administered that test improperly, and that the results of the FSTs must be excluded because those tests were administered without petitioner's consent and before Moss had developed subjective probable cause. *See State v. Nagel*, 320 Or 24, 880 P2d 451 (1994) (because administration of FSTs is a warrantless search under Article I, section 9, of the Oregon Constitution, officers can require motorists to perform FSTs only under exigent circumstances

"Q. [By petitioner's counsel] Okay. At what point did you form an opinion in your own mind that more likely than not, petitioner was Driving Under the Influence of Intoxicants?

"A. At the conclusion of the last [field sobriety] test."

[3] ORS 813.100(1) provides:

"Any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath, or of the person's blood if the person is receiving medical care in a health care facility immediately after a motor vehicle accident, for the purpose of determining the alcoholic content of the person's blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance. A test shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance. Before the test is administered the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130."

when officer has both objective and subjective probable cause to believe that motorist is driving under the influence of intoxicants).

Second, the hearing officer determined that even without the HGN and FST results, Moss had "reasonable grounds" to arrest petitioner for DUII. Specifically, the hearing officer reasoned that, under *State v. Gilmour*, 136 Or App 294, 901 P2d 894 (1995), petitioner's erratic driving and unsignaled right turn before the stop, in conjunction with the "slight odor of alcoholic beverage coming from Petitioner and * * * [the fact that] Petitioner's eyes were watery," were sufficient to establish probable cause to arrest petitioner for DUII.

Petitioner sought judicial review pursuant to ORS 813.450. In his memorandum to the circuit court, petitioner argued, in part, that the hearing officer's conclusion that Moss had probable cause was erroneous. In particular, petitioner argued that the hearing officer's reliance on *Gilmour* was misplaced:

> "[T]he court [in *Gilmour*] was determining objective probable cause and there was no issue as to the subjective prong of the probable cause determination. In that case, the issue of subjective probable cause was silent and the court allowed the factfinder to infer from the facts that the officer had a subjective belief in petitioner's intoxication. In the instant case, the record is not silent as to the officer's subjective probable cause. On the facts that were admissible to determine probable cause the officer had clearly stated that he did not have a subjective belief."

The circuit court reversed petitioner's suspension, concluding that Moss "did not have probable cause to arrest petitioner prior to requesting him to perform a breath test." The circuit court did not distinguish between objective and subjective probable cause.[4]

---

[1] The distinction between subjective and objective probable cause was first articulated by the Oregon Supreme Court in *State v. Owens*, 302 Or 196, 729 P2d 524 (1986). In *Owens*, the court found that Article I, section 9, of the Oregon Constitution, implies both a subjective and objective component to probable cause: "An officer must subjectively believe that a crime has been committed and thus the person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances." *Id.* at 204. As to the subjective component, the court further

On appeal, DMV assigns error to the circuit court's conclusion, arguing that (1) there was objective probable cause under *Gilmour*; and (2) at the time of the arrest, Moss did, in fact, subjectively believe that petitioner was guilty of DUII. DMV argues particularly that it is immaterial that Moss's subjective belief was explicitly premised on the results of the unlawfully administered field sobriety tests:[5]

> "Neither this court nor the Oregon Supreme Court has ever held that the facts underpinning subjective probable cause must themselves be admissible; to do so is to confuse the objective and subjective elements of probable cause. Whether the evidence is admissible may well be relevant to whether the officer's subjective belief that he had probable cause is objectively reasonable. What the officer actually believed is a separate issue."

Thus, in DMV's view, just as "a rose is a rose is a rose,"[6] for subjective probable cause purposes the officer's "belief is a belief is a belief"—that is, so long as the arresting officer *believes* that he or she has probable cause, the bases of that belief are legally immaterial. Even more bluntly, in DMV's view, it is immaterial whether the information giving rise to an officer's subjective belief is the direct product of unlawful police conduct.

DMV is wrong. *State v. Stowers*, 136 Or App 448, 454-55, 902 P2d 117 (1995). Even assuming, without deciding, that there was objective probable cause to arrest petitioner for DUII, *see Gilmour*, subjective probable cause cannot be based on the results of the unlawfully administered FSTs.

*Stowers* is exemplary. There, the arresting officer stopped the defendant for a traffic infraction and noticed the defendant's shaking hands, bloodshot eyes, and continual licking of his lips. The officer suspected drug use, so he used his flashlight to observe the defendant's pupils, which were unusually dilated. In addition, he reached over and placed his hands on the defendant's neck to take his carotid pulse.

---

clarified: "What is required is that the officer formulates such a basis to himself at the time he acts." *Id.*

[5] *See* 171 Or App at 593-94 n 2.

[6] Gertrude Stein, *Sacred Emily* (1913).

The officer then placed the defendant under arrest for driving under the influence of a controlled substance and transported him to the police station. As the defendant got out of the car at the police station, he dropped a bindle of cocaine. He was then charged with possession of a controlled substance. *Stowers*, 136 Or App at 450.

At trial, the defendant moved to suppress the cocaine on the basis of lack of probable cause. During the suppression hearing, the arresting officer testified that the defendant's pulse was an essential "building block" in the formation of his subjective belief that the defendant was under the influence of a controlled substance. *Stowers*, 136 Or App at 455. The trial court denied the defendant's motion to suppress.

We reversed, holding that the arresting officer's action of taking the defendant's pulse constituted an unconstitutional search and that the officer's subjective belief that he had probable cause to arrest the defendant could not be based on unlawfully obtained information:

> "The state cannot satisfy the first component of the test for probable cause, because Durbin [the arresting officer] did not form a subjective belief as to probable cause until after he had conducted his search. Taking defendant's pulse, in other words, amounted [to] an unconstitutional search. As a result, the information garnered from that search should not have been used to provide probable cause to arrest defendant. Durbin, however, testified that that information was one of the indispensable 'building blocks' to the formation of his belief that defendant was driving while intoxicated. At the time of the arrest, therefore, he did not have probable cause to believe that defendant was driving while intoxicated. The trial court erred in reaching the contrary conclusion and in denying defendant's motion to suppress." *Stowers*, 136 Or App at 454-55.

*Stowers* controls. Here, as in *Stowers*, the arresting officer formed the subjective belief that he had probable cause only after he had unlawfully administered the FSTs. *See* 171 Or App at 593-94 n 2. Thus, the results of the FSTs were, beyond question, an "indispensable building block" of Moss's subjective probable cause—and DMV does not contend otherwise. As in *Stowers*, without that "indispensable

building block" the officer lacked subjective probable cause. Consequently, the circuit court correctly reversed the hearing officer's order affirming suspension of petitioner's driving privileges.

Affirmed.