Submitted August 28, 2009, reversed and remanded June 30, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MARIANN CONNIE COFFER,
*Defendant-Appellant.*

Crook County Circuit Court
06FE0202; A138460

234 P3d 1082

Peter Gartlan, Chief Defender, and Meredith Allen, Senior Deputy Public Defender, Appellate Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Samuel A. Kubernick, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

ORTEGA, J.

**ORTEGA, J.**

Defendant appeals her conviction for possession of a controlled substance under ORS 475.894. She assigns error to the trial court's denial of her motion to suppress evidence—namely, a methamphetamine pipe—found when police officers searched her while conducting a warranted search of a residence that she was visiting. Because we conclude that the search was not justified, we reverse and remand.

We review the trial court's legal conclusions regarding the constitutionality of a search for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are bound by the court's findings of fact if there is constitutionally sufficient evidence in the record to support them. *State v. Pamperien*, 156 Or App 153, 155, 967 P2d 503 (1998).

Defendant, who was not named in the warrant, was present when police executed warrants to search Parras's premises and to arrest him. Parras had a "very violent criminal history of assaults," including involvement in a second-degree manslaughter. Police had executed another warrant to search Parras's premises about four months earlier. During that earlier search, they found a loaded pistol within an arm's reach of Parras. Savage, one of the officers involved, testified that Parras's history raised concerns about threats to the officers' safety during execution of the later warrant. In addition, two informants had told Savage that, after the execution of the first search warrant, Parras had been very upset and had made threatening statements.

Police returned to Parras's home to execute the warrant involved in this case. Savage knocked twice on the door of a fifth-wheel trailer, which he understood to be Parras's living quarters, and announced, "Police, search warrant." He heard someone moving inside the trailer and then heard a female voice saying, "I'm coming." Savage opened the trailer door and saw defendant pick up a purse, put it on her shoulder, and step out the door. Savage then told defendant that she was being detained but not arrested. He had her place her hands behind her back, removed the purse from her shoulder, and handcuffed her.

After a few minutes, another officer, Morgan, patted down defendant. Defendant was wearing cowboy boots, and the pant legs of her blue jeans were over the boots. Morgan lifted defendant's pant leg to look inside her boot. Morgan explained that she did so because "typically most people will hide things inside their boots[—]knives, guns, *et cetera*[—] and it was loose enough at the top that there could be something in between the skin and the boot * * *." Inside defendant's boot, Morgan saw a glass methamphetamine pipe, which she seized.

After defendant was charged with possession of a controlled substance, she moved to suppress the evidence found in her boot, and the trial court denied that motion. The court concluded that Morgan's actions—lifting defendant's pant leg and looking in her boot—did not exceed the scope of a reasonable frisk conducted for officer safety. The court explained that feeling the outside of a boot was like "patting a briefcase or patting something else that's made of leather or some heavier material." Defendant entered a guilty plea, reserving the right to challenge the denial of her suppression motion.

On appeal, defendant renews her contention that the evidence found as a result of the search of her boot should have been suppressed because the search violated her rights under Article I, section 9, of the Oregon Constitution. In her view, even if the officers had reasonable safety concerns to justify detaining and frisking her, those concerns did not justify the search of her boot. The state responds that, because defendant's boots impaired Morgan's ability to complete a frisk, it was necessary to lift the pant leg in order to complete an effective frisk.

■      Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" Nevertheless, an officer may

> "take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based on specific and articulable facts, that the citizen might pose an immediate

threat of serious physical injury to the officer or to others then present."

*State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). Although we do not "uncharitably second-guess an officer's judgment" in such cases, *id.*, we must determine "whether the *particular* step taken by the police was one that was reasonable under the *particular* circumstances, not whether that step was within the range of reasonable responses to officer safety concerns *in general,*" *State v. Rudder*, 347 Or 14, 22, 217 P3d 1064 (2009) (emphasis in original).

In *Rudder*, a police officer attempted to conduct a patdown search of the defendant, but the defendant twice turned away when the officer tried to touch the defendant's pocket. The officer and a second officer then handcuffed the defendant and, instead of completing the patdown, the first officer pulled open the defendant's pocket, shined a flashlight into it, and discovered a container of a white crystalline substance that turned out to be methamphetamine. *Id.* at 16-17. The court concluded that, although a patdown search of the defendant's exterior clothing was justified, the more intrusive search of the defendant's pocket was not: "A patdown, because of its limited intrusiveness, is constitutionally permissible if it is based on a reasonable suspicion of a threat to officer safety. But intrusion *into* a suspect's clothing requires something more—either probable cause or some greater justification than was present here." *Id.* at 25 (footnote omitted; emphasis in original).

Similarly here, Morgan conducted a search that went beyond an ordinary patdown when she intruded into defendant's clothing—that is, when she lifted defendant's pant leg to look inside defendant's boot. The state contends that *Rudder* is factually distinguishable because, here, an exterior patdown of defendant's boots would not have permitted Morgan to determine whether defendant had a weapon in her boot. We note that there was no testimony describing the boots in any more detail than "cowboy boots," and Morgan did not testify about what she could or could not feel through defendant's boot. Even assuming that the boot was thick enough to prevent Morgan from feeling anything hidden in the boot, defendant was handcuffed at the time that she was

searched and thus did not have access to anything hidden under her pant leg and inside her boot. *See, e.g., State v. Petri*, 214 Or App 138, 144, 162 P3d 1053 (2007) (concluding that opening a sunglasses case was not justified, because the contents of the case posed no threat where the officer already had taken the case from the handcuffed defendant's pocket). Here, under the circumstances, the more intrusive search was not justified, and the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.