Submitted on record and briefs July 29, 1988, affirmed May 17, reconsideration denied June 30, petition for review denied August 1, 1989 (308 Or 197)

STATE OF OREGON,
*Respondent,*

*v.*

HARRY THOMAS ASKAY,
*Appellant.*

(C-86-12-36621; CA A45830)

773 P2d 785

Russell J. Grattan, Vancouver, Washington, filed the brief for appellant.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Jonathan H. Fussner, Assistant Attorney General, Salem, filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Buttler, P. J., dissenting.

**ROSSMAN, J.**

Defendant was convicted of possession and delivery of a controlled substance. ORS 475.992(b). On appeal, he assigns as error the trial court's denial of his motion to suppress evidence found in a brown paper bag discovered in a warrantless search of a woman to whom defendant had transferred the bag, contending that the search violated his rights under Article I, section 9, of the Oregon Constitution. We affirm.

At the suppression hearing, there was conflicting testimony about the events leading to the seizure of the bag and the subsequent examination of its contents. We rely on the trial court's findings of fact, which accepted the officers' version of what occurred. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). Officers Biles and McNelly responded to a complaint of domestic violence. When they reached the scene, a neighbor told them that two men and a woman had had a "violent argument" in the street and had just gone into a house. Approaching the house, McNelly told Biles that someone was watching them through the curtains. Through a window in the front door, the officers saw defendant take a rolled-up brown bag from his coat pocket, give it to a woman later identified as Cindy Williams and run into a back room, slamming the door. Williams placed the bag in her coat pocket.

When the officers knocked and told Williams that they were responding to a report of domestic violence, she opened the door and let them in. Biles testified that she was extremely distraught and that it looked as though she had been assaulted. He knocked on the bedroom door and told defendant to come out, but defendant did not respond. Biles opened the door and saw defendant hiding behind it near a table on which a large claw hammer lay. When defendant refused to come out, Biles took hold of him and arrested him pursuant to the domestic abuse prevention act. ORS 133.055(2). A confrontation ensued, during which defendant began cursing and resisting arrest, forcing the officers to take him to the floor to handcuff him. As McNelly tried to question Williams further, defendant continually interfered, yelling at her not to say anything. Biles then conducted a pat down of defendant for weapons and, feeling a hard object in his coat, removed several syringes rolled in a plastic bag.

Biles had started to take defendant out to the patrol car when he remembered the bag in Williams' pocket. When he asked her what it contained, she hesitated before responding, then denied knowing anything about it. He then reached into her coat pocket, removed the bag and handed it to McNelly. Biles took defendant out to the patrol car and informed him of his *Miranda* rights. McNelly later brought the bag out to the car and asked defendant if it belonged to him. Defendant acknowledged that the bag was his, told Biles that it contained one and one-half ounces of "methodrone" [*sic*] and gave him permission to look inside. Finding methamphetamine, the officers arrested defendant for possession of a controlled substance.

The issue is whether the search of Williams and the seizure of the paper bag from her coat pocket violated defendant's rights under Article I, section 9. The trial court apparently denied defendant's motion to suppress on the basis of an abandonment theory, reasoning that defendant relinquished his privacy interest in the bag when he transferred it to Williams.[1] We do not decide the case on that theory. We affirm on the ground that the search of Williams was incident to defendant's lawful arrest.

A search incident to arrest constitutes an exception to the warrant requirement when it is conducted to protect an officer or to preserve evidence or when it is related to the crime for which the arrest was made and is reasonable in time, scope and manner. *State v. Flores,* 68 Or App 617, 628, 685 P2d 999, *rev den* 298 Or 151 (1984). During the course of an arrest, officers may find evidence that will support probable cause to

---

[1] The trial court found, in part:

"We now approach one of the real interesting questions of this case, and that is the brown bag. I think that, and I so find, that the prosecutor's point is well taken in what a person, what is a reasonable expectation of privacy. I'm impressed with the logic of the argument that says when you hand an article to another person, there is a transfer. I don't think it makes good sense to say that you can escape or expect that merely because you hand something to another person, that your rights are going to extend and should be transferred to that person. Certainly Ms. Williams' possession, in regard to the search of her person and her rights, would raise a very significantly different question, but that's not the issue before this Court."

Within the context of arguments made at the suppression hearing, it is clear that the trial judge denied defendant's motion to suppress on the basis of the state's theory of abandonment.

arrest for a second crime. In that event, a reasonable search for evidence of the second crime is valid, even though the officer has not yet made a formal arrest on the second charge. *State v. Owens,* 302 Or 196, 204, 729 P2d 524 (1986).

■ Given the facts as they unfolded here, Biles was justified in seizing the paper bag incident to defendant's arrest. As the trial court found, he had probable cause to arrest defendant for a crime involving violence directed at Williams. He was entitled to search defendant for his own protection. While searching defendant for weapons, he discovered several syringes rolled up in a baggie in his jacket pocket. He knew that defendant had handed Williams a brown paper sack just before trying to hide from police in the back bedroom and that he had had syringes in his possession. Cumulatively, those facts gave an officer with Biles' experience probable cause to believe that defendant had committed a second, drug-related crime.[2]

Biles' seizure of the bag from Williams constituted a proper search incident to arrest from two perspectives. First, it was necessary to preserve the evidence of the drug-related crime. Williams appeared to be a victim of defendant's domestic violence. Defendant had reduced her to tears by screaming at her not to give the police any information. Biles could reasonably believe that fear or loyalty would motivate her to destroy the bag's contents as soon as the officers left the house.

Second, the search was related to the crime of possession of a controlled substance and was reasonable in time, scope and manner. It occurred close in time and space to defendant's arrest. *State v. Caraher,* 293 Or 741, 760, 653 P2d 942 (1982). Moreover, because Biles merely removed the sack

---

[2] Circumstantial evidence in the record establishes that, in addition to having objective evidence on which to make a probable cause determination, Biles also formed a subjective belief that defendant had committed the crime of possession of a controlled substance. He testified that, although he did not know what was in the bag when he approached the house and saw it, it made an impression on him, and he was somewhat suspicious. He also testified that he recalled the bag and began questioning Williams about it when he still had defendant on the floor. Although Biles did not testify specifically regarding his state of mind, that sequence of events leaves little doubt that he found the syringes, recalled the bag and decided to seize the bag in the belief that it contained drugs.

from Williams' possession and awaited defendant's permission to examine its contents, it was no more intrusive than was necessary to preserve the evidence.

Defendant argues that, under *State v. Tanner*, 304 Or 312, 745 P2d 757 (1987), Article I, section 9, protects a person against the unlawful seizure of property entrusted to another. He contends that, because he entrusted the brown paper bag to Williams, the police violated his privacy interests when they seized it from her.

It is true that, under *Tanner*, an individual does not relinquish Article I, section 9, rights in property simply by placing it in the custody of another. Thus, defendant retained property and privacy interests in the bag while it was in Williams' possession, just as he would have if he had kept it in his own pocket. That is not to say, however, that defendant could strengthen his privacy interest by entrusting his property to Williams or that he can now assert her privacy rights. On the contrary,

> "the search or seizure must violate the defendant's section 9 rights before evidence obtained thereby will be suppressed; a defendant's section 9 rights are not violated merely by admitting evidence obtained in violation of section 9." *State v. Tanner, supra*, 304 Or at 315.

Had there been no justification for the warrantless search of Williams, the police would have violated defendant's Article I, section 9, rights. Because the paper bag was seized pursuant to a search incident to defendant's arrest, however, there was no violation of his rights.

Affirmed.

**BUTTLER, P. J.**, dissenting.

Because there is no basis on this record, and no trial court findings, to support the majority's conclusion, I dissent. The issue is whether the search of Williams and the seizure of the paper bag from her coat pocket violated defendant's Article I, section 9, rights. The trial court's analysis rested on the proposition that, when defendant "handed" or "transferred" the bag to Williams, he ceased to have a "reasonable expectation of privacy" in it. That analysis, however, has been rejected as inappropriate under Article I, section 9: "[T]he

privacy protected by Article I, section 9, is not the privacy that one reasonably *expects* but the privacy to which one has a *right." State v. Campbell,* 306 Or 157, 164, 759 P2d 1040 (1988). (Emphasis in original.) The trial court found only that defendant handed the bag to Williams; it did not find that he had intended to terminate his ownership in it, *see Rich v. Runyon,* 52 Or App 107, 112-13, 627 P2d 1265 (1981); accordingly, it did not conclude that defendant had abandoned the bag, as the majority suggests. If he had, *his* rights were not violated.

Because defendant had not abandoned the bag, Williams was a bailee, and defendant retained both a property and privacy right in it. *State v. Tanner,* 304 Or 312, 745 P2d 757 (1987). Accordingly, the warrantless search of Williams and the seizure of the bag from her were unlawful, unless the search was justified as incident to defendant's arrest.

The trial court found that the officers had probable cause to arrest defendant for a crime involving violence directed at Williams, which was the officers' stated justification for the arrest. The evidence and findings support that conclusion. Incident to that arrest, the officers were entitled to search defendant for their own protection and for evidence relevant to that crime, which, presumably, would include any kind of weapon that might have been used in assaulting Williams. Neither officer testified that he believed that Williams was armed or that the paper bag contained a weapon. There is no factual premise to justify the search as incident to defendant's arrest for assault.

The state argues, and the majority agrees, that the search of Williams may be justified on the basis that, when the officers lawfully searched defendant incident to his arrest, they found some unused plastic syringes in a plastic bag, whereupon they then had probable cause to believe that drugs were involved, justifying defendant's arrest for possession of a controlled substance. However, the possession of the syringes was not a crime and, in order to arrest defendant for possession of a controlled substance, the officers needed probable cause to believe that the paper bag that defendant had handed to Williams contained a controlled substance. *If* that had been the case, the officers would have been justified in searching further for evidence of that crime, even though they had not

yet arrested him for that reason, *State v. Owens,* 302 Or 196, 729 P2d 524 (1986), and it would be at least arguable that seizure of the paper bag from Williams would have been permissible on the theory that defendant had constructive possession of it. *See State v. Caraher,* 293 Or 741, 653 P2d 942 (1982).

The difficulty with that analysis here is that there is no evidence, and no trial court findings, that either officer believed that defendant possessed, or that the bag contained, controlled substances at the time when they arrested and searched him, or that either officer formulated such a basis to himself at the time of the search and seizure. Even if there were an *objective* basis for the officers to believe that the crime of unlawful possession of a controlled substance had been committed by defendant, the officers must have had the *subjective* belief that defendant had committed that crime. It is not enough, as the majority would hold, that the officers *could have* believed that defendant possessed a controlled substance. In *State v. Owens, supra,* the court summarized the requirements to establish probable cause:

> "Probable cause under the Oregon Constitution has both a subjective and an objective component. An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances. The test is not simply what a reasonable officer *could have* believed when he conducted a warrantless search or seizure, but it is what this officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and experience. Neither is the test whether the officer articulates to the suspect the basis for a second ground for arrest. What is required is that the officer formulates such a basis to himself at the time he acts." *State v. Owens, supra,* 302 Or at 204. (Emphasis in original.)

Given my conclusion that the evidence does not support any lawful basis for searching Williams and seizing the paper bag from her, I dissent.