Argued and submitted May 28, affirmed September 10, 1997

STATE OF OREGON,
*Respondent,*

*v.*

KEVIN SCOTT HART,
*Appellant.*

(94-1338; CA A92303)

945 P2d 532

Steven V. Humber, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

Defendant was convicted of possession of a controlled substance. ORS 475.992. On appeal, he assigns error to the trial court's denial of his motion to suppress evidence seized from his car. We affirm.

On October 10, 1994, Clatsop County Deputy Sheriff Bergin stopped defendant for speeding on Highway 26. Bergin approached defendant, who was the driver and sole occupant of the car, and asked him for his driver license. Defendant identified himself and told Bergin that he did not have a license and that he lived at an address in Portland. After confirming that defendant did not have an Oregon driver license, Bergin returned to defendant's car and asked defendant if he had any identification. Defendant then told Bergin that he had a California driver license, but that he had left it in a motel room in Astoria. Bergin asked defendant why he gave him a Portland address when he had a California driver license. Defendant did not provide an explanation. Bergin could not confirm whether defendant had a California driver license.

Bergin arrested defendant for failure to carry or present a driver license, ORS 807.570,[1] but did not handcuff him. Bergin then asked defendant if he had any identification in his car. Defendant said that he did not. Bergin also asked defendant if he had any drugs or weapons in the car. Defendant responded in the negative. Bergin asked defendant for consent to search his car. Defendant agreed to the search and signed a written consent-to-search form. Before searching the car, Bergin patted down defendant's outer clothing and then handcuffed him. As he did so, Bergin saw "visible track marks, injection wounds," on defendant's arms. Bergin testified that, based on his observation of the needle marks on defendant's arms, he had "reason to believe there were narcotics in [defendant's] car." He then asked defendant whether there were any needles in the car, and defendant

---

[1] ORS 807.570 provides, in part:

"(4) A police officer may detain a person arrested or cited for the offense described in this section only for such time as reasonably necessary to investigate and verify the person's identity."

said that there were. Bergin searched defendant's car, looking for "identification especially." Furthermore, because Bergin planned to place his drug-detecting dog in the car to search for drugs, he also looked for any loose narcotics or needles that could hurt the dog. At that time, Bergin did not open any bags or containers. Bergin then placed the dog in the car to search for drugs, and the dog indicated that there were drugs in a backpack. Sometime later, Bergin searched the backpack and found marijuana and methamphetamine. Defendant was charged with possession of a controlled substance.

■     The trial court denied defendant's motion to suppress the evidence seized from his car, concluding that Bergin's search of the car was authorized under ORS 807.570(4), because he was looking for defendant's identification. The court also held that a second search of defendant's car occurred when Bergin placed the dog into the car. On appeal, defendant challenges only the search involving the dog. With regard to that ruling, the trial court explained that

> "the question * * * is whether [Bergin] can then bring the dog in to search for drugs, and I think that exceeds his authority unless he had some other basis besides just this arrest for failure to carry or possess. He testified that he saw fresh needle marks on the defendant's arms, and thence my question is, is that enough to justify a further search for drugs in the defendant's vehicle. I find under these circumstances that it was sufficient. It takes it out of the [*State v.*] *Dominguez-Martinez*[, 321 Or 206, 895 P2d 306 (1995)] situation, because in that case the officer had nothing after the ticket was issued. In this case there was something more that gave the officer probable cause to believe that there would be drugs in the vehicle."

Defendant assigns error to the trial court's ruling, arguing that the dog search "exceed[ed] the permitted scope of a traffic infraction stop and was without other justification or reason." The state responds that the search by the dog "constituted a lawful search incident to arrest," because Bergin had probable cause to arrest defendant for possession of a controlled substance based on his observation of the fresh needle

marks on defendant's arms and defendant's admission that there were needles in the car.

■     "Probable cause" to arrest means that "there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS 131.005(11). Whether probable cause exists depends largely on the facts of each case. *State v. Warner*, 284 Or 147, 149, 585 P2d 681 (1978). The significance of particular facts to the determination of probable cause may be evaluated on the basis of an officer's training and experience. *State v. Reid*, 107 Or App 352, 354-55, 811 P2d 1380 (1991). The officer must subjectively believe that a crime has been committed, and this belief must be objectively reasonable under the circumstances. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986).

Here, defendant does not challenge Bergin's testimony that, based on his observation of "injection wounds" on both of defendant's arms from intravenous drug use, he had reason to believe that there were narcotics in the car. That observation entitled Bergin to ask defendant if there were needles in the car. Defendant admitted that there were. Bergin's observation, combined with defendant's statement, established probable cause to allow Bergin to search defendant's car for drugs. *See State v. Askay*, 96 Or App 563, 567, 773 P2d 785, *rev den* 308 Or 197 (1989) (an officer's knowledge that a defendant possesses syringes, combined with observations of other facts consistent with possession of a controlled substance constitutes probable cause to arrest for a "drug-related crime").

Nonetheless, defendant argues, Bergin's observations did not give him "reason or authority to extend the scope of the ORS 810.410 traffic infraction * * * stop." Defendant relies on *State v. Jones*, 141 Or App 63, 918 P2d 111 (1996), for the proposition that "needle marks together with conflicting stories about the source of the marks was not sufficient to justify an extension of the ORS 810.410 traffic infraction investigation." Defendant's reliance on *Jones* is misplaced. In *Jones*, the only question was whether the stop of the car in which the defendant was riding as a passenger constituted a "stop" of the defendant for the purposes of ORS

810.410. *Jones*, 141 Or App at 66. That case did not require us to decide whether "old needle marks" that the officer observed on the defendant's arms provided the officer with probable cause to arrest the defendant.

The trial court did not err in denying defendant's motion to suppress.

Affirmed.