Argued and submitted January 31, affirmed March 14, 2001

## STATE OF OREGON,
*Appellant,*

*v.*

## MARK SCOTT BRIDGEMAN,
*Respondent.*

(C98-11-39315; CA A106372)

23 P3d 370

Kaye E. McDonald, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Monica L. Finch, Deputy Public Defender, argued the cause for respondent. With her on the brief was David E. Groom, State Public Defender.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Ceniceros, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

The state appeals from a pretrial order granting defendant's motion to suppress evidence in a prosecution for possession of a controlled substance, ORS 475.992(4), and delivery of a controlled substance, ORS 475.992(1). We conclude that the warrantless search that yielded the suppressed evidence was not justified by reasonable officer safety concerns or under any exception to the warrant requirement. Accordingly, we affirm.

■ On review of a motion to suppress, we are bound by the trial court's factual findings if there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). On August 13, 1998, defendant was a passenger in a rental car driven by Tipple. Portland police officers believed that the car might be connected to an alleged forgery and stopped the car after it exceeded the speed limit. Officer Gustafson was among the officers involved in the stop.

Because Tipple was unable to produce any identification, the officers arrested him for failure to display a driver's license. ORS 807.570(1)(b)(A). The officers then determined that the car was a rental car and that Tipple's driving privileges were suspended. In accordance with Portland Police Bureau policy, the officers contacted the rental agency to make arrangements for the car to be picked up, rather than towed.[1]

The officers then asked defendant to get out of the car. Although defendant was "very cooperative" throughout the stop, the officers were concerned about their safety because defendant had several knives and other weapons on his belt, because defendant had a history of resisting arrest, and because the officers believed that defendant had an earlier conviction for murder.[2] Consequently, Gustafson placed

---

[1] During the officers' interactions with Tipple and defendant, Gustafson saw, in plain view in the car, a portable printer, an open pouch containing a "bunch of checks," and a case that possibly held a portable computer. Those observations strengthened Gustafson's belief that the vehicle had been used in connection with forgery-related activities. Given the basis of our disposition, however, those observations are immaterial to our analysis.

[2] Defendant had been charged with murder but was, in fact, convicted of manslaughter.

defendant in handcuffs, removed the weapons from defendant's belt and asked defendant if he could search him for any other weapons. Defendant consented and, during the ensuing search, Gustafson found a tool that could be used as a weapon. During and after the search of defendant's person, defendant remained handcuffed and was standing a "few feet" from the car.

Thereafter, while defendant was still handcuffed and outside the car, Gustafson searched the car without defendant's or Tipple's consent. Gustafson justified that search as being based on officer safety concerns.[3] During that search, Gustafson found a small (2 inches by 4 inches) black pouch with "Rebel" written on its side. Gustafson, who knew that defendant's nickname was "Rebel," picked up the pouch and felt it. In doing so, he could tell that the pouch did not contain coins. Gustafson then took the pouch from the car to where defendant was standing, still handcuffed, and asked defendant if there was anything in the pouch "that [defendant] shouldn't have or that [Gustafson] should be concerned about." Defendant hung his head and looked at the ground for a minute. He then nodded toward the pouch and said, "I don't sell." When asked by Gustafson how much was inside the pouch, defendant replied, "about a quarter ounce." Gustafson immediately opened the pouch and found eight bindles of methamphetamine. As a result of Gustafson's discovery, defendant was charged with delivery of a controlled substance and possession of a controlled substance.

Before trial, defendant filed a motion to suppress, arguing that the evidence seized during the stop, and particularly the methamphetamine, was obtained as the result of an unconstitutional search. Defendant challenged, *inter alia*, Gustafson's search of the car, his warrantless seizure of the zippered pouch, and his subsequent warrantless search of the pouch's contents.[4] The state responded, in part, that Gustafson's search of the car was justified by officer safety concerns or, alternatively, that the pouch would inevitably have been

---

[3] During the suppression hearing, Gustafson discussed his reasoning in that regard. The substance of that testimony is set out below. 173 Or App at 41-42.

[4] Defendant based his argument on both Article I, section 9, of the Oregon Constitution, and on the Fourth Amendment to the United States Constitution.

discovered during an inventory before the car was returned to the rental company. The state further argued that opening the pouch was a lawful search because defendant consented to the search of the pouch when he gave Gustafson consent to search his person, and because the search was justified by probable cause coupled with exigent circumstances—specifically, the automobile exception to the warrant requirement.

During the suppression hearing, Gustafson gave the following testimony with respect to the "officer safety" justification for the search of the car:

"[Defense Counsel]  And now, at this point, he was removed from the vehicle itself; is that correct? He didn't have access to the car at this point, did he? When you were removing the weapons from him?

"[Gustafson]  No.

"[Defense Counsel]  But despite that, you started searching the car for weapons; is that correct?

"* * * * *

"[Gustafson]  It is based on officer safety. If there is a weapon at the scene, or there is a likelihood that there is going to be a weapon someplace, we want to get it, control it, render it safe, and secure it. It is a safety issue. We don't leave guns under car seats or anything regardless of whether the person is in handcuffs or not.

"In fact, [defendant] and I discussed the case in Florida while I was explaining to him the need for handcuffing him where there were two detectives that were shot and killed by a man who was handcuffed. * * *

"* * * * *

"[Defense Counsel]  Tell me what access [defendant] had to any weapons after you had already removed the weapons from his person. He had been handcuffed and then removed from the vehicle area?

"[Gustafson]  That's right.

"[Defense Counsel]  What scenarios could you possibly think of where he could grab a weapon and use it against the officers?

"[Gustafson]    Well, that's why we did all of that, to prevent any of those scenarios from happening. So I'm not sure I understand your question. He was handcuffed. His weapons were removed. He was searched for additional weapons, and then he was taken a few feet away from the vehicle where there could possibly be additional weapons. And he was removed from the area."

The trial court granted the motion to suppress. In doing so, the court, while explicitly rejecting the state's "inevitable discovery" argument,[5] concluded that officer safety concerns justified the search of the car. However, the court concluded, Gustafson's warrantless opening of the opaque zippered pouch constituted an unlawful search under *State v. Kruchek*, 156 Or App 617, 969 P2d 386 (1998), *aff'd by an equally divided court* 331 Or 664, 20 P3d 180 (2001).

On appeal, the state argues, primarily, that *Kruchek* was wrongly decided and should be overruled. In particular, the state asserts that the totality of the circumstances, especially including defendant's explicit and implicit admissions, made it "virtually certain" that the pouch contained unlawful controlled substances and that, given that "virtual certainty," the opening of the pouch was lawful. The state further argues that Gustafson's search of the car was lawful as: (1) a reasonable officer safety measure; (2) a "community caretaking function;" or (3) an inventory. Finally, the state asserts that, in all events, defendant had no protected privacy interest in the car or its contents.

We decline the state's invitation to revisit *Kruchek*. We similarly decline to divine and define a principled point of "virtual certainty" on the continuum from absolute doubt to probable cause to absolute certainty. Instead, we conclude

---

[5] In rejecting that argument, the court stated:

"Now, that gets us to the inevitable discovery issue under *State v. Miller*[, 300 Or 203, 709 P2d 225 (1985)]. There have been very few appellate decisions applying *State v. Miller*. But what is clear is that there is a two-part test. The probable cause must establish by a preponderance of the evidence that certain proper and predictable investigatory procedures would [have been] utilized in the case and that those [procedures would] have resulted in the evidence in question. * * * Where the state does not offer evidence upon which findings can be based that specific proper and predictable investigatory procedures would be followed that the inevitable discovery [doctrine] cannot be upheld. And so I will not uphold it in this case because we have no evidence to support it."

that suppression is required because Gustafson's search of the car was unlawful and, in particular, was not justified under the officer safety doctrine.[6]

■ In *State v. Bates*, 304 Or 519, 747 P2d 991 (1987), the court articulated the officer safety doctrine:

> "Article I, section 9, of the Oregon Constitution, does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *Id*. at 524.

The court further explained that courts should not "uncharitably second-guess an officer's judgment" and that the proper inquiry is "whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time the decision was made." *Id*. at 524-25.

■ *Bates*, thus, affords officers "considerable latitude to take safety precautions" in potentially dangerous situations. 304 Or at 524. However, there are limits: "[W]e must draw the line at some point," *id*. at 527, as, indeed, the court did in *Bates* itself. As we explained in *State v. Rickard*, 150 Or App 517, 947 P2d 215, *rev den* 326 Or 234 (1997):

> "Thus, 'reasonableness' under *Bates* necessarily requires consideration both of the nature and extent of the perceived

---

[6] We do not consider the state's "community caretaking function" contention because that contention was not raised before the trial court and, if it had been, the development of the factual record might well have been affected. *See State ex rel Juv. Dept. v. Pfaff*, 164 Or App 470, 478, 994 P2d 147 (1999), *rev den* 331 Or 193 (2000) (addressing preservation principles); *Outdoor Media Dimensions, Inc. v. Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001).

We also do not consider the state's "inventory" argument. Before the trial court, the state expressly disclaimed that, at the time Gustafson found the pouch, he was conducting an inventory. Rather, the state's only reference to an inventory before the trial court was in the context of its "inevitable discovery" argument—*i.e.*, that ultimately, before the car was released to the rental company, an inventory *would have* been conducted, and the pouch would have been found then. As noted, the trial court expressly rejected that contention, *see* 173 Or App at 45 n 7, and the state does not dispute that ruling.

Finally, the state made no argument below as to defendant's lack of, or abandonment of, any protected interest in the car and its contents. Accordingly, we decline to consider that argument.

danger and of the degree of intrusion or restraint resulting from the officer's conduct, keeping in mind that we are not to 'uncharitably second-guess' the split-second decisions of officers working under dangerous, potentially deadly, circumstances." *Rickard*, 150 Or App at 526.

Applying those principles, we assume, without deciding, that, in the totality of the circumstances here—defendant's violent criminal record, including his history of resisting arrest, and the knives visible on defendant's belt—Gustafson's actions in handcuffing defendant and taking his weapons were reasonable officer safety measures. *Compare State v. Dyer*, 157 Or App 326, 970 P2d 249 (1998) (officer safety did not justify search of car where defendant, who had a knife on his belt and an earlier conviction for unlawful possession of a weapon in a public building, was cooperative and had not said or done anything that could be interpreted as creating an immediate threat of serious physical harm) *with State v. Aman*, 164 Or App 348, 991 P2d 1096 (1999) (circumstances, including arrest of defendant's passenger on felony drug charges and possibility that defendant himself was implicated, gave rise to threat of injury that justified pat-down of defendant). However, Gustafson's subsequent warrantless search of the car was not similarly justified.

We recapitulate the circumstances at the time Gustafson searched the car: Tipple, the driver, had been taken into custody for failure to present a driver's license. Defendant had been unvaryingly cooperative throughout a protracted stop and was handcuffed, standing several feet from the car, in the presence of armed officers. Defendant was, by then, unarmed and had consented to the officer's search of his person. The rental company had been contacted and was going to retrieve the car. Given the totality of those circumstances, there was no "immediate threat of serious physical injury to the officer" that warranted additional intrusive measures. *Bates*, 304 Or at 524

As Gustafson testified at the suppression hearing, *see* 173 Or App at 41-42, defendant no longer had access to the car. *Compare State v. Ehly*, 317 Or at 83 n 16 (" '[W]hen a police officer has reason to believe that a lawfully stopped individual is dangerous and may gain immediate control of a

weapon, he may conduct a search *of the area around the individual from which the individual could obtain a weapon.' "*; quoting Rudstein, Erlinder and Thomas, 1 *Criminal Constitutional Law* § 2.07[7] (1992)). Nor was the car going to be released to defendant; it was being returned to the rental company. The only "threat" here was abstract speculation that an apparently "fully cooperative" citizen, who was handcuffed and was standing several feet from a car, *might* somehow lunge into the car where a weapon *might* have been hidden. *Compare State v. Knox*, 134 Or App 154, 894 P2d 1185 (1995), *vac'd on other grounds* 327 Or 97, 957 P2d 1209 (1998) (officer's concern that suspect standing outside of truck that had its windows rolled down "might have access to weapons in the interior by reaching through the window" did not justify search of vehicle on officer safety grounds).[7]

In sum, this was not a situation in which "the potential for danger was great" and "the need for *all* safety precautions was paramount." *Rickard*, 150 Or App at 527 (emphasis in original).[8] The search of the car was unlawful.

The trial court did not err in granting the motion to suppress.

Affirmed.

---

[7] *See also State v. Suter*, 157 Or App 107, 111 n 1, 969 P2d 1035 (1998) (reiterating adherence to officer safety portion of our original decision in *Knox*).

[8] *Quare*: Could the officers have eliminated even that speculative potential simply by locking the car? *Compare State v. Fondren*, 285 Or 361, 367, 591 P2d 1374, *cert den sub nom Oregon v. Fondren*, 484 US 834, 100 S Ct 66, 62 L Ed 2d 44 (1979) ("officer cannot create exigent circumstances by his own inaction") *with Ehly,* 317 Or at 83-84 (rejecting the defendant's argument that police created officer safety concern: "The [create-own-exigency] rationale * * * is inapplicable to circumstances such as those found here, where the officers were confronted by an immediate threat of serious physical injury.").