Argued and submitted March 30, reversed and remanded April 28, 2004

STATE OF OREGON,
*Respondent,*

*v.*

ELIUD RUBIO,
*Appellant.*

C00-06-34587; A113111

89 P3d 1184

Anne Fujita Munsey argued the cause for appellant. With her on the supplemental brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender. On the opening brief were David E. Groom, Acting Director, Office of

Public Defense Services, and Steven N. Humber, Deputy Public Defender.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Landau and Schuman, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals a judgment of conviction on one count of possession of a controlled substance. ORS 475.992(1). He contends that the trial court erred in denying his motion to suppress evidence of his possession of a plastic bag containing methamphetamine that a police officer removed from defendant's pants pocket during a stop. We agree and reverse and remand.

The relevant facts are not in dispute. Shortly before midnight, Officer Baker received an anonymous report of two apparently intoxicated Hispanic men who were standing outside an apartment building yelling loudly and threatening to shoot the people inside the building. One of the men was reported to be wearing a jersey with a number printed on it. Baker was approximately one block away from the apartment building when he received the call. He parked his car and walked toward the apartment. Two apparently Hispanic men, one of them defendant, ran toward him. One of them wore a numbered jersey and held a can of beer. Baker turned his flashlight on the two men and told them to stop, but they ignored his command. Baker drew his weapon and repeated the command to stop. The two men stopped.

At that point, Baker believed that those were the two men who had threatened the people in the apartment building. He told them so, but they denied that they were involved. Baker told the men to kneel on the ground with their hands on their heads. He then asked the men if he could search them. They said that he could. As Baker later testified, he had defendant hold his hands behind his back as Baker began a "real cursory pat of his sides and waistband." Baker testified that as he

> "got to the coin pocket on the right front side of his pants, there's a bulge—big enough for me, to be obvious to me, so I asked him what it was. He didn't say anything. As I continued to, as I continued to pat it, I asked him if there was anything sharp that was going to poke me or hurt me in his pockets. He said, 'No.'
>
> "I put my finger in his coin pocket and pulled out a cellophane wrapper which possibly came from a cigarette pack

and, it had a small, clear plastic baggie inside with some, that had some light colored residue. In the same pocket there were eight other small plastic baggies which, which were all folded into another plastic baggie, and all eight of those also contained light-colored crystal. Due to my training and experience, I believed them all to possibly be methamphetamine and seized them as evidence."

When asked what led him to the conclusion that the baggies contained methamphetamine, Baker explained, "The texture, the way it was packaged, the color, just the way it was, the way it was being carried." The contents of the baggies were tested and found to be methamphetamine.

Defendant moved to suppress the evidence, arguing that Baker lacked reasonable suspicion to stop him and that, even if Baker had authority to stop him, the officer lacked authority to seize the contents of defendant's pants pockets. The state argued that Baker had reasonable suspicion to stop defendant and that defendant consented to the search.

The trial court denied defendant's motion. The court explained that, in light of the information that Baker received and defendant's behavior when asked to stop, Baker had reasonable suspicion to believe that defendant was one of the two men reported to have been threatening others at the apartment. The trial court, however, rejected the state's contention that defendant consented to the search:

"[A]t that point consent is not going to be a factor in getting a valid search. At that point these individuals, their, their will is overborne. They've been subjected to the officer's authority. A reasonable person in that circumstance kneeling on the ground with their hands on their heads, having been stopped and directed to do so by an officer with their, with a firearm drawn, a reasonable person doesn't feel free to refuse a request to consent and this defendant didn't feel free to do that."

The court nevertheless concluded that the seizure of the contents of defendant's pocket was justified because the officer "felt a bulge in the pocket that he felt was an item that might well be drugs."

On appeal, defendant again argues that Baker lacked a basis to stop him and that, even if Baker lawfully

stopped him, he did not lawfully seize the contents of his pockets. The state argues that the information that Baker received, in combination with defendant's behavior, was sufficient to justify the stop. As for the seizure of the baggies in defendant's pocket, the state argues that the officer reasonably concluded that it was probable that defendant's pocket contained controlled substances.

We assume for the sake of argument that Baker had reasonable suspicion to stop defendant. *See State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991) (officer may stop a person for investigation if there is reasonable suspicion that the person has committed a crime). We further assume without deciding that Baker had reason to believe that defendant posed a danger and might possess weapons, thus authorizing the officer to engage in the patdown search. *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987).

■■ If, during the patdown, an officer develops probable cause to believe that the person has committed a crime, the officer may search the person for evidence of the suspected crime. *State v. McCoy*, 155 Or App 610, 614-15, 964 P2d 309 (1998). The search may precede the actual arrest as long as probable cause exists at the time of the search. *State v. Green*, 67 Or App 70, 74, 676 P2d 938, *rev den*, 297 Or 82 (1984). "Probable cause" exists if the officer subjectively believes that it is more likely than not that the person has committed a crime and that belief is objectively reasonable. *State v. Williams*, 178 Or App 52, 60, 35 P3d 1088 (2001). Whether probable cause exists poses a question of law. *State v. Kappel*, 190 Or App 400, 404, 79 P3d 368, *rev den*, 336 Or 509 (2003).

■ In this case, we need not address the parties' arguments about whether Baker had developed subjective probable cause to believe that defendant possessed controlled substances before Baker seized the contents of defendant's coin pocket. Even if Baker had developed such a belief, on the record before us, that belief was not objectively reasonable. As the trial court found, during a weapons patdown, Baker seized the contents of defendant's pocket because he had "felt a bulge in the pocket that he felt was an item that might well be drugs." There is no suggestion in the record that Baker thought the coin pocket contained a weapon, and the state

does not argue that a concern for officer safety justified the seizure of the contents of the pocket.

The state's only argument is that Baker reasonably believed that the pocket contained drugs.[1] A bulging pocket, however, does not—by itself—reasonably suggest that, more likely than not, its contents are controlled substances. Baker did testify that, once he had removed the contents of the pocket and examined them, he thought that "[t]he texture, the way it was packaged, the color, just the way it was, the way it was being carried" led him to conclude that the contents were methamphetamine. But that statement described what happened *after* the seizure had occurred and concerned his conclusion that what he had already seized was the particular controlled substance methamphetamine.

Because the record does not establish an objectively reasonable basis for believing that defendant's coin pocket contained controlled substances, his motion to suppress should have been granted. The trial court therefore erred in ruling to the contrary.

Reversed and remanded.

.

---

[1] The state does not challenge the trial court's conclusion that defendant's consent was not voluntarily given.