Argued and submitted February 21, Banks High School, Banks; reversed and remanded July 11, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ROBERT WILLIAM PETRI,
*Defendant-Appellant.*

Multnomah County Circuit Court
040331230; A127188

162 P3d 1053

Jay Edwards argued the cause and filed the brief for appellant.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

## ORTEGA, J.

Defendant appeals his conviction for possession of a controlled substance. *See former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005). He assigns error to the trial court's denial of his motion to suppress evidence found during a warrantless search following a traffic stop. We agree with defendant that the state did not demonstrate any valid basis for a police search of defendant's closed sunglasses case, in which a police officer found methamphetamine. Accordingly, we reverse and remand.

We review the trial court's legal conclusions regarding the constitutionality of a search for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are bound by the court's findings of fact if there is constitutionally sufficient evidence in the record to support them. *State v. Pamperien*, 156 Or App 153, 155, 967 P2d 503 (1998).

The following facts are drawn from the testimony of the police officer who was the sole witness at the hearing on defendant's motion to suppress. One clear, sunny afternoon, Officer Durbin observed defendant leaving the front yard of a "known drug house." Defendant was on a bicycle and riding quickly. Durbin, on a marked police motorcycle, followed defendant and observed him fail to make proper turn signals and to obey a stop sign. Durbin activated his lights and siren, and defendant immediately stopped, stepped off his bicycle, and laid it down. Durbin noticed a bulge in a front pocket of defendant's pants. Defendant appeared startled and nervous, although Durbin acknowledged that bicyclists are rarely pulled over and are likely to be surprised by a traffic stop. Durbin was concerned that defendant had "happy feet" and might try to run.

In response to Durbin's questions, defendant said that he did not have any identification with him, was on probation, and did not know of any outstanding warrants for his arrest. Defendant appeared to be afraid and nervous, but made no move to run away. Durbin ordered defendant to sit on the curb while Durbin wrote a ticket, and defendant complied. Durbin described defendant's sitting on the curb as "a

place of safety for me because in order to move from that position he's got to make movements that are going to be telegraphed to me."

As defendant sat down, Durbin noticed a bulge in defendant's front pants pocket and was concerned that it could have been a pocketknife or other dangerous item. Although defendant did not behave aggressively and was cooperative during the entire encounter, Durbin testified that he was concerned by defendant's demeanor. Nevertheless, defendant did not try to put his hands in his pockets at any point during the encounter.

Durbin instructed defendant to remain seated while Durbin conducted a patdown. After searching defendant and feeling the object in his pocket, Durbin asked defendant about it. Defendant responded that it was his sunglasses case. When Durbin asked what was inside the case, defendant stammered and then responded that it contained a "point," a street term for a hypodermic needle.

Durbin was concerned that the needle could endanger him. Although no one had ever attacked Durbin with a needle, he had previously been stuck with a needle while conducting a search. He considered a hypodermic needle to be potentially very hazardous and thought it justified an officer-safety search. Durbin also thought that, given that defendant had been at a house known for drug activity, "there certainly was the possibility that if he has a hypodermic needle with him, that it is certainly * * * common to see drugs found behind the hypodermic needles. By that I mean, behind the search or seizure of those things."

Durbin told defendant that he was under arrest for possession of a controlled substance (PCS). After handcuffing defendant, Durbin removed the object from defendant's pocket. It was a hard sunglasses case, about four to five inches long. Durbin could not see its contents without opening it. Durbin provided *Miranda* warnings and then opened the case, in which he found hypodermic needles and methamphetamine. Defendant told Durbin that the case and its contents were his.

Durbin then ran a records check on defendant and discovered a felony warrant arising from a probation violation. Durbin placed defendant under arrest on the warrant and arranged to transport him to jail. According to Durbin, he would have searched defendant on the basis of the arrest warrant and because defendant "was going to jail so I had to inventory the contents of his person prior to placing him in the police vehicle. Since I had also found [m]ethamphetamine on him, I would continue my search for more evidence of drugs and drug use."

After defendant was charged with PCS, he moved to suppress all evidence obtained as a result of the search of his person and his sunglasses case. The state contended that the searches were justified by officer safety; that the evidence would inevitably have been discovered, after Durbin learned of the warrant, as part of a search incident to a lawful arrest or as part of an inventory; and that Durbin "had further authority under a search incident to arrest for any additional items that would substantiate drug possession." The trial court denied defendant's motion, finding the facts to be consistent with Durbin's testimony and accepting the state's legal arguments. Specifically, the court reasoned that the evidence would inevitably have been discovered when defendant was arrested and taken into custody. After a stipulated facts trial, defendant was convicted.

Defendant appeals, assigning error to the denial of his motion to suppress and renewing his argument that the patdown search and the search of the sunglasses case were illegal. The state responds that the evidence would inevitably have been discovered after defendant's arrest on the warrant, because Durbin would have performed an inventory and would have searched defendant to ensure officer safety. In addition, the state contends that the evidence was found during a search incident to a lawful arrest for possession of a controlled substance.

Defendant does not dispute that he was lawfully stopped for a traffic violation and that the subsequent arrest on discovery of the warrant was lawful. The question is whether the actions Durbin took between those lawful acts complied with Article I, section 9, of the Oregon Constitution,

which provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

■      When police conduct a warrantless search or seizure, the burden is on the state to establish the validity of the search. *State v. Tucker*, 330 Or 85, 89, 997 P2d 182 (2000); *see also* ORS 133.693(4) ("Where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution."). Because it is dispositive, we focus on the search that occurred when Durbin opened defendant's sunglasses case, that is, the search that uncovered the methamphetamine. We conclude that none of the justifications offered for that search is valid.

■      The state first contends that Durbin inevitably would have discovered the evidence after arresting defendant pursuant to the warrant. Evidence obtained in violation of a defendant's rights under Article I, section 9, may be admissible if the state can demonstrate, by a preponderance of the evidence, that police would have used certain proper and predictable investigatory procedures that would inevitably have resulted in discovery of the evidence at issue. *State v. Johnson*, 335 Or 511, 514 n 2, 73 P3d 282 (2003). Here, the state contends that, after arresting defendant on the warrant, Durbin would have searched him both for reasons of officer safety and as part of an inventory. The state's inevitable discovery argument thus separates into two prongs: (1) a search incident to a lawful arrest on the warrant, justified by officer safety, and (2) an inventory. We examine each in turn.

■■      The first part of the state's argument fails because there is no evidence that such a search was required to protect the officer's safety.

"Under the Oregon Constitution, a valid custodial arrest does not by itself authorize a search. *State v. Caraher*, 293 Or 741, 757-60, 653 P2d 942 (1982). A warrantless search must be justified by the circumstances surrounding the arrest. *Id.* 'Under Article I, section 9, there are three valid

justifications for a search incident to lawful arrest: to protect the officer's safety, to prevent the destruction of evidence, and to discover evidence relevant to the crime for which the defendant was arrested.' *State v. Hoskinson*, 320 Or 83, 86, 879 P2d 180 (1994)."

*State v. Sopiwnik*, 176 Or App 127, 132, 30 P3d 430 (2001) (footnote omitted). Here, the state contends only that, after arresting defendant pursuant to the warrant, Durbin would have searched him for officer safety reasons. Assuming that Durbin inevitably would have arrested defendant pursuant to the warrant and then seized him, however, there is no evidence that officer safety concerns would have required Durbin to open the sunglasses case.

■ ■   Under the officer safety exception to the warrant requirement of Article I, section 9, an officer may "take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based on specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). We consider whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time the officer decided to conduct a search. *Id.* at 525.

Here, by the time that Durbin conducted the search at issue by opening the sunglasses case, he had already felt the case in defendant's pocket, handcuffed defendant, and removed the case from defendant's pocket. It is difficult to see how, under those circumstances, the contents of the case presented any threat, let alone an immediate threat. *See State v. Bridgeman*, 173 Or App 37, 44, 23 P3d 370 (2001) (the search of a car was not justified by officer safety where the defendant had been cooperative, was handcuffed, had consented to the search of his person and had been searched, and was by then unarmed and standing several feet from the car); *State v. Dickerson*, 135 Or App 192, 194-95, 898 P2d 193 (1995) (opening and inspecting the blade of the defendant's pocket-knife was not justified by officer safety concerns, because the knife was not a threat after officers took possession of it).

*State v. Seal*, 138 Or App 693, 910 P2d 394, *rev den*, 323 Or 483 (1996), is not to the contrary. There, the defendant was a passenger in a car that was stopped after the driver committed a traffic infraction. The police officer arrested the defendant pursuant to a warrant and, after handcuffing her, asked if she had any weapons or needles; she told the officer not to search her if he did not "want to get poked." 138 Or App at 695. Reversing the suppression of evidence found during the officer's subsequent frisk of the defendant, we determined that the search was justified by a concern for the officer's safety. *Id.* at 698. In *Seal*, the defendant's statement suggested that she was carrying needles loose upon her person and that physical contact with her would result in a needle stick. The officer also was concerned that the needles could be used as weapons. *Id.* There was thus an immediate risk to the officer from leaving the needles on the defendant's person.

Here, by contrast, defendant told Durbin that the sunglasses case contained a needle, and Durbin already had removed the case from defendant's pocket, so that defendant no longer possessed the needle. The needles that Durbin eventually discovered were contained in a hard case that he had patted and removed from defendant's pocket without any resulting injury. Like the pocketknife in *Dickerson*, the needles in defendant's sunglasses case posed no threat after they were removed from defendant's possession. Because no officer safety concern would have justified opening the case at that time, Durbin would not have inevitably discovered the contents of the case as part of a search incident to a lawful arrest on the warrant.

■ The state's inventory argument likewise fails because, as defendant points out, there was no evidence that an applicable inventory policy would have required opening the sunglasses case. No inventory policy was in evidence; rather, the only evidence on the issue was Durbin's testimony that, after arresting defendant on the warrant, he would have searched defendant further "to inventory the contents of his person prior to placing him in the police vehicle."

In *State v. Herrin*, 323 Or 188, 195-97, 915 P2d 953 (1996), the state contended that certain evidence, contained

in a closed gym bag on the back seat of a car, would inevitably have been discovered during an inventory of the vehicle. A police officer testified that police would have towed the car and that, when a vehicle is towed, a written inventory policy required examining the vehicle's contents. The court explained that the evidence was not sufficient to support the state's inevitable discovery argument because, in addition to another deficiency, it did "not demonstrate that the closed gym bag would have been opened as part of the inventory. '[E]xamining the contents' of the back seat could mean simply listing a gym bag in the inventory." *Id.* at 197 (alteration in original). Here, likewise, the record contains no evidence demonstrating that Durbin would inevitably, as part of a proper inventory, have opened the sunglasses case.

The state next contends that Durbin's search of the sunglasses case was justified as a search incident to a lawful arrest for possession of a controlled substance. To justify a search on that basis, the officer searching for evidence of a crime must have probable cause to arrest. *State v. Jacobs*, 187 Or App 330, 333, 67 P3d 408 (2003).

> "A warrantless arrest is appropriate if a police officer has probable cause to believe that a person has committed a felony. ORS 133.310(1)(a). Probable cause to arrest must be based on 'a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it.' ORS 131.005(11). From a constitutional perspective, two components comprise probable cause: '[a]n officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances.' *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986)."

*State v. Pollock*, 337 Or 618, 622-23, 102 P3d 684 (2004) (alteration in original; footnote omitted). We examine the totality of the facts and circumstances to evaluate the objective reasonableness of an officer's belief that a crime has been committed. *Jacobs*, 187 Or App at 333.

Here, at the time that defendant was arrested for PCS, Durbin knew only that defendant had bicycled away from a house known for drug activity and that defendant, by

his own admission, possessed a hypodermic needle. The mere possession of a needle does not constitute a crime. *See* ORS 475.525 (prohibiting sale or delivery of "drug paraphernalia" but providing that such "paraphernalia does not include hypodermic syringes or needles"). Nor was there evidence that defendant appeared to be under the influence of controlled substances or that defendant had any items, other than a needle, that Durbin associated with possession of drugs. Durbin simply testified that it is "common" during searches to find drugs with needles and that he believed, given defendant's possession of a needle, that there was a "possibility" that defendant had drugs.

The possession of needles, when combined with other facts suggesting the possession of controlled substances, may be sufficient to establish probable cause to search for evidence of a drug-related crime. *State v. Hart*, 149 Or App 635, 639, 945 P2d 532 (1997). In *Hart*, the defendant did not "challenge [the officer's] testimony that, based on his observation of 'injection wounds' on both of [the] defendant's arms from intravenous drug use, he had reason to believe that there were narcotics in the car." *Id*. at 639. That unchallenged observation of past drug use, combined with the defendant's admission that he presently had needles, was sufficient to establish probable cause. *Id*. Here, by contrast, Durbin made no observations that led him to believe that defendant had used drugs or was under the influence of drugs. Durbin relied only on the facts that defendant had bicycled away from a drug house and that defendant admitted to having a needle. Unlike *Hart*, where the defendant's intravenous drug use provided a clear connection between the possession of a needle and the probability that the defendant possessed drugs, the combined circumstances here were not enough to demonstrate that it was more likely than not that defendant committed the offense of possession of a controlled substance. Rather, the facts and circumstances suggested only the possibility that defendant possessed a controlled substance. Because the facts were insufficient to establish probable cause to arrest defendant for PCS, the search of the sunglasses case could not be justified as a search incident to a lawful arrest for that crime. *See State v.*

*Rubio*, 193 Or App 208, 212-13, 89 P3d 1184 (2004) (the presence of a bulging pocket, which an officer thought might contain drugs, did not establish objective probable cause); *Jacobs*, 187 Or App at 334-35 (probable cause was not established where the defendant behaved furtively and exchanged money while in an area known for drug activity). It follows that the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.